## AMERICAN CHAIN CO., Inc., v. HARTFORD–CONNECTICUT TRUST CO.

### No. 25.

Circuit Court of Appeals, Second Circuit.

Nov. 9, 1936.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and James A. Cosgrove, Sp. Assts. to Atty. Gen. (Robert P. Butler, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., of counsel), for appellant.

David S. Day, of Bridgeport, Conn. and Long, St. Lewis & Nyce, of Washington, D. C. (Frederick S. Duncan, of New York City, Charles P. Swindler, of Washington, D. C., and Norman K. Parsells, of Bridgeport, Conn., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

PER CURIAM.

This case now comes before us for the second time, after the Supreme Court [United States v. Jefferson Electric Co., 291 U.S. 386, 406–411, 54 S.Ct. 443, 450–452, 78 L.Ed. 859], reversed our decision upon the first appeal [Eaton v. American Chain Co. (C.C.A.) 63 F.(2d) 783], and sent it back for a second trial. We shall

not state the facts again, relieving ourselves of that duty by a reference to the two opinions just mentioned, as well as to the opinions of Judge Hincks upon the first trial [American Chain Co. v. Eaton (D.C.) 58 F.(2d) 248], and of Judge Thomas upon this one [(D.C.) 11 F.Supp. 770]. The case divides into two parts; first, whether the chains were "accessories" to taxable motor vehicles; second, whether the plaintiff has shown that it has not "passed on" the tax to its customers. The second part in turn divides into two more; those collections made before July 12, 1923, and those made later. The present judgment has awarded the plaintiff recovery for the whole period. Although it appeared upon the first trial that the chains were used upon more taxable than untaxable vehicles, it was impossible to tell in advance upon which kind any particular set would go, for they were equally adapted to serve either. For this reason Judge Hincks concluded that they were not "primarily adapted" for use upon a taxable car and that the collections were unlawful. When the case came before us we thought, the facts being undisputed, that the finding was open for review, depending as it did upon an interpretation of the test laid down in Universal Battery Co. v. United States, 281 U. S. 580, 50 S.Ct. 422, 74 L.Ed. 1051. We understood that test to refer, not to the physical construction of the chain, but to its probable destination, and that, as the number of taxable cars on which the chains were used enormously exceeded the nontaxable, they were "primarily adapted" for the taxable. This the Supreme Court reversed, not, as we understand, so much because our gloss upon Universal Battery Co. v. United States, supra, was wrong, though that may have been true, as because there was some evidence to support Judge Hincks's finding, which for that reason was beyond our power of review. Upon this trial the finding of Judge Thomas upon the first issue is no different in substance from that of Judge Hincks, except, indeed, that he did not find that the destination of the chains was so preponderantly for taxable vehicles, though the evidence was equally strong. We ought not disturb his finding, if we ought not to have disturbed Judge Hincks's, for there is as much evidence in support of it as there was before. The first point is therefore with the plaintiff.

■ The next is whether for the period before July 12, 1923, the plaintiff has shown that it did not "pass on" the tax to its cus-

tomers. This was not before us on the first appeal, but the Supreme Court reversed Judge Hincks's judgment because the only finding which he had made was merely that the plaintiff had carried the burden of proof upon the issue; such a finding it thought insufficient to support the judgment. This defect Judge Thomas has now supplied. Action No. 3371 concerned the period between July 31, 1922, and January 31, 1923, before which the plaintiff during the month of March, 1919, had indeed "passed on" the tax upon its customers, but had later refunded it. But except for this the only changes in its prices from February 25, 1919, when the tax was imposed, to July 12, 1923, were either to reduce them, or to increase the discounts, except that on April 18, 1923, some prices were increased. The last change was in any case after January 31, 1923, and in addition there is no evidence that the increase had any relation to the tax, since at the same time some prices were decreased. The plaintiff's practice was to weight the costs with a load of fifty per cent. for overhead, out of which taxes among other things were paid; no change in this method was made after February 25, 1919. It is true that it appears in this record that between April 6, 1922, and July 12, 1923, the list prices were fixed upon the basis of "Estimate of Cost Sheets," upon which was stamped a legend that "freight, excise, tax, export, commissions, welfare work" were not included in "overhead," and must be added in fixing selling prices. However, this at best raised a question of fact for the judge as to whether this formula was the one actually applied, or whether, as he found, prices were fixed by the constant percentage for overhead which included the tax. Regardless of the Supreme Court's ruling, we should hold that this finding concluded us. Therefore we affirm as to this cause of action.

■ Action No. 3360 was for the period between January 31, 1923, and January 31, 1924. Except for the price change of April 18, 1923, which we have already considered, the plaintiff conducted its business as before until July 12, 1923. On that day it began to bill its customers differently, that is, by adding at the foot of the invoice the words: "1/21 of Above Amounts Represents Federal Excise Tax." This it did because under a regulation of the Treasury it supposed that it might, as it did, compute its tax upon $20/21$ of the invoice instead of upon its full face. In all other respects it kept its books as it had before, loading the cost

with 50 per cent. overhead and not changing its price. All this appears in Judge Thomas's findings together with the general conclusion that the plaintiff did not "pass on" the tax. When the case was before the Supreme Court it considered Judge Hincks's findings and concluded that they were insufficient to support the judgment for the period after July 12, 1923. He had found, just as Judge Thomas has now found, that the invoices contained the words we have quoted, which he thought, standing alone, would have been enough to defeat the claim, the plaintiff having also computed the tax on $^{20}\!/_{21}$ of the invoice. However, in spite of the fact that these facts, taken alone, would have been enough to "pass on" the tax to the plaintiff's customers, he concluded otherwise, because it appeared that the "real sales price" had been reduced by the amount of the tax; that is, the customers had paid the same amount after the tax was imposed as before. That conclusion the Supreme Court "disregarded" as "not a finding of fact, but unsatisfactory reasoning," reversed the judgment, and sent back the case for another trial. It said that, as the plaintiff had billed its customers and computed its tax in this way, it could succeed only if "it returned the tax to them," which Judge Hincks's findings did not show that it had done. Judge Thomas's do not do so either, and could not because the plaintiff had not returned the tax, and indeed does not assert that it has, but only that its customers have never borne it. As that is directly in the face of the Supreme Court's ruling, the seventeenth finding, so-called, to the contrary must be "disregarded."

■ Finally, because of the fifteenth finding, the plaintiff contends that the "real sales price" was not $^{20}\!/_{21}$ of the invoice but its full amount, thus distinguishing Judge Hincks's contrary finding, on which the Supreme Court is supposed to have relied. This finding, we gather, it thinks supported because the invoices merely read that $^{1}\!/_{21}$ of their face was tax, and did not add that $^{20}\!/_{21}$ was sales price. This strange notion in turn it hangs upon a ruling of the Bureau of Internal Revenue interpreting section 3 of Regulations 47 of 1921. That section allowed the tax to be computed in some instances upon $^{20}\!/_{21}$ of the invoice, giving examples of invoices of which the third was that chosen by the plaintiff; and the ruling is supposed to have declared that that kind of invoice would not entitle the taxpayer to the privilege granted by section 3. We are not sure that the ruling did so hold, but it would have made no difference if it had; the plaintiff actually computed its tax on $^{20}\!/_{21}$ of the invoice and got the benefit of the section. Moreover, the point was decided by the Supreme Court against the plaintiff anyway. The invoices of the Jefferson Electric Company were in this form: "On automotive accessories $^{1}\!/_{21}$ of amount indicated herein equals 5% excise tax. $^{20}\!/_{21}$ of amount indicated equal price"; and the court made no distinction between that form and the plaintiff's. We cannot suppose that, if Judge Hincks had not called $^{20}\!/_{21}$ of the invoice the "real sales price," it would have allowed itself to be fobbed off by the mere form of his finding. It declared that the relevant facts were whether the taxpayer "by its invoices * * * represented to its purchasers that the amount shown thereon included the tax as well as the selling price, and * * * returned that amount less the tax as the selling price, and caused the tax to be computed on that basis." United States v. Jefferson Electric Co., 291 U.S. 386, at page 405, 54 S.Ct. 443, 450, 78 L.Ed. 859. The plaintiff as much represented that the amount returned included both tax and selling price, as though it had added that the selling price was $^{20}\!/_{21}$ of the amount. It is impossible to find any purpose of advising buyers that they were paying the tax unless the selling price was independent and did not include it.

It follows that the judgments in Nos. 3360 and 3421 must be reversed; the plaintiff can recover nothing in No. 3421 and in No. 3360 only for the period before July 12, 1923. Upon the new trial the recovery in No. 3360 will not include chains adapted for motorcycles or for Overman cushion tires, both of which were taxable. Whitehead & Kales wheels appear upon this record not to have been taxable and the recovery may include them, unless the proof is different next time. The judgment in No. 3371 should be affirmed; it does not appear that these three items were not properly dealt with in computing the recovery, and the appellant has therefore failed to show error.

Judgment in No. 3371 affirmed.

Judgments in Nos. 3360 and 3421 reversed.